## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ANDREWS RESTORATION, INC. d/b/a PROTECH SERVICES, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 3:15-cv-1336-M |
| NATIONAL FREIGHT, INC. a/k/a NFI INDUSTRIES a/k/a NFI, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Leave to File First Amended Complaint

[Docket Entry #5]. For the reasons stated below, the Motion is **DENIED** in part and

**GRANTED** in part.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Andrews Restoration, Inc. d/b/a Protech Services ("Protech") alleges that

Defendant National Freight, Inc. a/k/a NFI Industries ("NDC") breached a contract for repairs,

remediation, and mitigation services Protech provided due to a flood at NDC's warehouse in

Garland, Texas ("Garland warehouse").[1] Protech is a citizen of Texas, and NDC is a citizen of

New Jersey and Delaware.[2]

---

[1] Dkt. No. 1-1 at 4 (Pl.'s Orig. Pet. ¶¶ 8-9).

[2] Defendant contends that it is improperly named as NFI Industries, Inc. a/k/a NFI Industries a/k/a NFI, and instead, should be named National Distribution Centers, L.P. Dkt. No. 11; Dkt. No. 7. Protech pled that NFI was a citizen of New Jersey; however, in its Response to Plaintiff's Motion for Leave, NDC clarifies that it is a citizen of Delaware and New Jersey. Dkt. No. 7. Protech does not contest NDC's Delaware citizenship. Dkt. No. 5 at 2 ("NDC is a Delaware limited partnership with its principal place of business in New Jersey."). The parties also do not dispute that there is complete diversity between the current parties to the suit. Only the joinder sought by the Amended Complaint would destroy diversity.

On October 9, 2014, after representatives of NDC and Protech conducted multiple "walk-throughs" of the Garland warehouse, David Shatto ("Shatto"), the General Manager of NDC, e-mailed Rudy Martinez, of Protech, and instructed him to initiate the discussed repairs.[3] Although Shatto did not request an estimate or pricing information, Martinez informed Shatto and Andrew Soule, NDC's attorney, that Protech used Xactimate industry standard pricing guidelines and software, a claims-estimating program commonly used in construction and restoration.[4]  Martinez replied affirmatively to Shatto's e-mail, and stated that Protech would begin the repairs immediately.[5]

Protech began the repairs at the Garland warehouse on October, 9, 2014, by extracting standing water, sweeping and disposing of debris, applying disinfectant deodorizer, and setting up drying equipment.[6]  The following day, representatives of NDC and Protech participated in a series of telephone conferences to discuss pricing, and NDC requested a summary of the work completed and an estimate for the remaining work.[7]  Protech detailed the work and calculated $58,000 as the cost for the work performed, and $42,000 more to complete the job.[8]  Shatto then informed Protech that its services were no longer needed.[9]  Protech removed its equipment from the Garland warehouse and sent NDC an invoice for $74,324.27, which NDC disputed.[10]

On March 4, 2015, Protech filed suit against NDC in state court Dallas for breach of contact.[11]  On April 28, 2015, NDC filed its Amended Answer, in which it asserted that the

---

[3] *Id.* ¶ 10.
[4] *Id.* ¶¶ 11-12.
[5] *Id.* ¶ 15.
[6] *Id.*
[7] *Id.* ¶¶ 16-19, 22-27.
[8] *Id.* ¶¶ 23-28.
[9] *Id.* ¶ 31.
[10] *Id.* ¶¶ 44-46.
[11] Dkt. No. 1-1.

purported contract lacked consideration, or alternatively, was the result of economic duress.[12]

NDC also raised defenses of comparative negligence, waiver, and failure to mitigate damages.[13]

On April 29, 2015, NDC removed the suit to this Court.[14]  On May 8, 2015, Protech filed

its Motion for Leave to File First Amended Complaint, seeking to join Shatto as a Defendant

because, according to Protech, if Shatto did not have the authority to enter into a contract on

behalf of NDC, as Protech believes NDC implied in its Amended Answer, Shatto was a party to

the contract and he, instead of NDC, would be liable for breach of contract, promissory estoppel,

and quantum meruit.[15]  Protech also alleges that, if Shatto was not authorized to bind NDC, he

would be liable for fraud and negligence based on misrepresentations he made regarding his

authority when he solicited Protech to commence repairs, and promised that NDC would abide

by Protech's pricing guidelines.[16]  Shatto is a Texas resident, so his joinder would destroy

complete diversity.

Protech also moves for leave to substitute National Distribution Centers, L.P. as a

Defendant.[17]  NDC does not oppose this aspect of Plaintiff's Proposed Amended Complaint.[18]

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) generally governs when a court may allow a

party to amend its pleading, and it provides that "court[s] should freely give leave when justice

so requires." Fed. R. Civ. P. 15(a)(2).  However, the court has greater discretion to grant or deny

joinder when a plaintiff seeks to join a nondiverse party after removal.  28 USC § 1447(e) ("If

---

[12] Dkt. No. 11 at 2 (Def.'s Amended Answer).
[13] *Id.*
[14] Dkt. No. 1 at 2-3 (Def.'s Notice of Removal ¶¶ 3-5).
[15] Dkt. No. 5 at 2 (Pl.'s Mot. for Leave to File First Amended Complaint).
[16] Dkt. No. 5-1 at 11, 13-15 (Pl.'s Proposed First Amended Complaint ¶¶ 67, 84, 89, 96).
[17] Dkt. No. 5 ¶ 1–2; Dkt. No. 11.
[18] Dkt. No. 7.

after removal the plaintiff seeks to join additional defendants whose joinder would destroy

subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action

to the State court.").

In deciding whether to permit the joinder of a nondiverse defendant after removal, courts

in the Fifth Circuit consider four factors, as outlined in *Hensgens v. Deere & Co*: (1) the extent to

which the purpose of the amendment is to defeat diversity jurisdiction, (2) whether the plaintiff

has been dilatory in asking to amend, (3) whether the plaintiff will be significantly injured if

amendment is not allowed, and (4) any other special equitable factors.  833 F.2d 1179, 1182 (5th

Cir. 1987).  Courts use these factors to balance the plaintiff's interest in avoiding parallel

litigation in state and federal court with the defendant's interest in being in a federal forum.  *Id.*

According to the Fifth Circuit in *Hensgens*, the four factors better balance these competing

interests than does determining joinder based on a "rigid distinction of whether the proposed

added party is an indispensable or permitted party."  *Id.*  District courts in the Fifth Circuit apply

this four-factor test in deciding whether to allow joinder.  *See, e.g., Lucas v. Abbott Laboratories*,

No. 3:12-CV-3654-B, 2013 WL 2905488, at *2 (N.D. Tex. June 13, 2013); *Bonilla v. America's

Servicing Co.*, No. CIV.A. H-11-1974, 2011 WL 3882280, at *2 (S.D. Tex. Sept. 2, 2011).

**ANALYSIS**

**I.    Purpose of the Amendment**

When examining the first *Hensgens* factor, courts consider the validity of the claims

against the nondiverse defendant: when a plaintiff states a potentially viable claim against the

nondiverse defendant it seeks to join, the plaintiff's principal purpose is not deemed to defeat

diversity jurisdiction.  *McNeel v. Kemper Casualty Ins. Co.*, No. CIV.A. 3:04-CV-0734, 2004

WL 1635757, at *3 (N.D. Tex. July 21, 2004); *see also Bonilla*, 2011 WL 3882280, at *3.  On

the other hand, if the claims alleged against the nondiverse defendant are not viable, this factor

clearly weighs in favor of denying joinder.  *See Smith v. Robin America, Inc.*, CIV.A. H-08-

3565, 2009 WL 2485589, at *5 (S.D. Tex. Aug. 7, 2009) (rejecting joinder of nondiverse

landlord because plaintiffs failed to state a "cognizable claim" against the landlord when

"landlord liability could not arise in these circumstances");  *Bienamie v. Kitzman*, CIV. A. 00-

284, 2000 WL 381932, at *5 (E.D. La. April 12, 2000) (noting that the first *Hensgens* factor

weighed in favor of defendant when plaintiff sought to add nondiverse defendant under

"questionable" claims that required "further discovery" to "define the validity or non-validity of

the plaintiff's causes of action").  However, if Protech alleges even one viable claim against

Shatto, the Court would not conclude that the principal purpose of the proposed amendment is to

defeat diversity jurisdiction.  *See Bonilla*, 2011 WL 3882280, at *3.

Protech argues that it has viable claims against Shatto because he will be personally liable

for alleged misrepresentations he made when he retained Protech to perform the repairs on the

Garland warehouse, and promised to abide by the Xactimate industry standard pricing guidelines

and software.[19]  Protech notes the legal principle that corporate agents can be held liable for their

own tortious acts.  *See Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.

1984); *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied);

*Wilmot v. Bouknight*, No. 01-13-00738-CV, 2015 WL 968394, at *7 (Tex. App.—Houston [1st

Dist.] Mar. 3, 2015, no pet.) (citing *Leyendecker*, 683 S.W.2d at 375); *Hull v. S. Coast

Catamarans, L.P.*, 365 S.W.3d 35, 44-45 (Tex. App.—Houston 2011, pet. denied).

NDC responds by arguing that Protech misunderstands NDC's defense of lack of

consideration—NDC acknowledges that Shatto had actual authority to enter into a contract with

---

[19] Dkt. No. 5 at 3–4.

Protech, and instead, NDC contends that there was no meeting of the minds between NDC and Protech.  NDC argues that Protech's claims against Shatto are pled in the alternative and, because Shatto had the requisite authority to bind NDC, Protech's claims against Shatto are based on a set of unpled contentions.

The Court finds that Protech's claim against Shatto for breach of contract, even as pled in the alternative, is not plausible.  NDC acknowledges that Shatto was its agent and possessed actual authority to act on its behalf in negotiating with Protech.  Dkt. No. 7 at 7-8.  As NDC's agent, Shatto cannot be liable for breach of contract absent extenuating circumstances.  An agent can only be liable on a contract if he substitutes himself for the principal or if he expressly or impliedly consents to liability on the contract.  *Id.* (citing *Mediacomp, Inc. v. Capital Cities Commc'n Inc.*, 698 S.W.2d 207, 211 (Tex. App. —Houston [1st Dist.] 1985, no writ)).  There is no such allegation in Plaintiff's proposed First Amended Complaint.  *See* Dkt. No. 5-1 ¶¶ 11-12, 67-74.  Accordingly, Protech's alternative breach of contract claim against Shatto is not viable.

Protech's fraud and negligent misrepresentation claims are not subject to the same analysis because "an agent is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment."  *Hull*, 365 S.W.3d at 44–45.  However, apart from Protech's allegations about Shatto's representations regarding his authority, which have been mooted by NDC's acknowledgement that Shatto had actual authority to bind NDC, Protech does not plead specific facts that would make Shatto individually liable for promissory estoppel, quantum meruit, negligent misrepresentation, or fraud.  *See In re Parkcentral Global Litig.*, No. 3:09-CV-0765-M, 2010 WL 3119403, at *3 (N.D. Tex. Aug. 5, 2010) ("It is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another."); *see, e.g.*, Dkt. No. 5-1

¶ 84 ("Alternatively, if Mr. Shatto lacked authority to bind NFI and NDC . . . ."); *id.* ¶ 87 ("NFI, NDC, and Mr. Shatto committed fraud against Protech); *id.* ¶ 88 ("NFI, NDC, and Mr. Shatto made material misrepresentations . . . ."). Accordingly, as pled in its proposed First Amended Complaint, Protech's claims against Shatto are not viable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (explaining that "threadbare recitals" of elements and "mere conclusory statements" do not make a plaintiff's claims plausible).

The first *Hensgens* factor is important here. Where a plaintiff "seek[s] to add a nondiverse defendant shortly after removal, but prior to any additional discovery, [that] is further indication that the amendment is sought for the purpose of defeating diversity." *Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 889 (S.D. Tex. 2010). However, if it is clear that the plaintiff sought to include the defendant in the litigation from the beginning, then an amendment sought shortly after removal is not probative of a plaintiff's intent to defeat diversity. *Watson v. Law Enforcement Alliance of Am., Inc.*, 451 F. Supp. 2d 870, 873 (W.D. Tex. 2006) (finding proper purpose where nondiverse defendant was a party at the time of removal and was dismissed without prejudice).

Furthermore, when deciding whether the primary purpose of an amendment is to defeat diversity, courts take into account whether the plaintiff "knew or should have known the identity of the nondiverse defendant when the state court complaint was filed." *Priester v. Long Beach Mortgage Co.*, No. 4:10-CV-641, 2011 WL 6116481, at *2 (E.D. Tex. Dec 8, 2011), *aff'd sub nom Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013) (citing *Tomlinson v. Allstate Indem. Co.*, No. Civ. A. 06–0617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006)). If the plaintiff did not know the nondiverse defendant's identity at the time the complaint was filed, it is less likely that the plaintiff is joining the nondiverse defendant to destroy diversity.

*See Jackson v. Wal-Mart Stores, Inc.*, No. Civ.A. 03-2184, 2003 WL 22533619, at \*2 (E.D. La. Nov. 6, 2003); *In re Norplant Contraceptive Products Liability Litigation*, 898 F. Supp. 433, 435–36 (E.D. Tex. 1995).

However, if the plaintiff knew of the nondiverse defendant from the outset and chose to exclude him from the original pleading, the court "views this fact with much suspicion." *O'Connor v. Automobile Ins. Co. of Hartford Connecticut*, 846 F. Supp. 39, 41 (E.D. Tex. 1994). Courts have considered this knowledge very relevant.  *See Anzures*, 886 F. Supp. 2d at 564 (explaining that the plaintiff's "clear desire to litigate this case in state court, coupled with the fact that Plaintiff has known of [nondiverse Defendant]'s identity and role in this case since the beginning . . . trump the fact that the Proposed Amended Complaint asserts cognizable claims against [nondiverse Defendant.]"); *Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 889–90 (S.D. Tex. 2010); *Lucas*, 2013 WL 2905488, at \*6.

Protech argues that joinder was unnecessary until NDC denied the existence of a contract in its Amended Answer, which constituted a "new fact or information" that "made it necessary" for Protech to add Shatto as a defendant.[20]  Actually, NDC's Amended Answer asserts a defense of lack of consideration, not that Shatto lacked authority to enter into a contract with Protech, but in any case, his authority is now undisputed.  Further, Protech always knew about Shatto but did not sue him.

In an analogous case, *Anzures v. Prologis Texas*, the court held that a plaintiff who knew of "the facts supporting" the nondiverse defendant's potential liability "since the beginning of the litigation" could not add the defendant after removal simply because the plaintiff recently discovered that the nondiverse defendant's immunity defense was suspect.  886 F. Supp. 2d 555,

---

[20] Dkt. No. 8 at 3 (Pl.'s Reply).

563 (W.D. Tex. 2012).  The facts recited in Protech's First Amended Complaint do not meaningfully differ from the facts recited in its Original Petition.  In *Anzures*, the court denied a motion to amend when the plaintiff attempted to join a nondiverse defendant using "the same facts" that the plaintiff had at the beginning of the suit.  *Id.*

Here, the facts underlying Protech's fraud and negligent misrepresentation claims against Shatto are the same facts Protech recited in its Original Petition.  Protech clearly identified Shatto as the NDC employee who told Protech to "initiate the discussed repairs" and who later terminated the agreement.  *See* Dkt. No. 1-1 ¶ 10.  Protech does not explain why it did not bring its fraud and negligent misrepresentations claims against Shatto in its Original Petition, and the Court finds it important that Protech waited until nine days after removal, and almost two months after commencing suit, to plead such claims.  *Alba v. S. Farm Bureau Cas. Ins. Co.*, No. 308-CV-0842-D, 2008 WL 4287786 at *2 (N.D. Tex. Sept. 19, 2008) ("[W]aiting until shortly after removal to assert claims of which the plaintiff has been aware against a non-diverse defendant raises considerable suspicion concerning plaintiffs' purpose").  The Court notes that, according to the allegations in Protech's Original Petition and proposed First Amended Complaint, other NDC agents played substantial roles in the set of events that gave rise to this suit.  For example, the bulk of the allegations in Protech's Original Petition pertain to Craig Bollinger, NDC's Senior Vice President of Risk Management, who is alleged to have told Martinez, of Protech, that "he and Mr. Soule would be representing [NDC] in dealing with Protech," "agreed to Protech's use of Xactimate [pricing]," participated in the relevant telephone conferences, and negotiated costs after the work was complete.  Dkt. No. 1-1 ¶¶ 16-19, 30, 35, 37, 38-48.  Other allegations focus on Andrew Soule, NDC's attorney, who, like Shatto, participated in the "walk-throughs" of the Garland warehouse because of his prior experience working with Protech,

recommended that Protech photograph and video its work after it began, participated in the relevant telephone conferences, and represented NDC in dealing with Protech.  *Id.* ¶ 10, 12-14, 16, 20-22, 35-36, 38.  However, Protech is not seeking to join Bollinger or Soule.

Thus, even if Protech had asserted viable claims against Shatto, the timing of the proposed amendment suggests Protech's principal purpose is to destroy diversity, and this factor weighs strongly against granting leave.

## II.    Dilatoriness

The second *Hensgens* factor relates to the timing of the proposed joinder, and there is no set timetable for when a proposed amendment reflects dilatoriness.  *Compare Bonilla*, 2011 WL 3882280, at *4 (allowing plaintiff to add a proposed nondiverse defendant three weeks after originally filing complaint in state court) *and Martinez*, 701 F. Supp. 2d at 891 (allowing plaintiff to add nondiverse defendant two months after initial complaint was filed and one month after case was removed to federal court) *with Philips v. Delta Air Lines Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001) (holding it was dilatory to wait two months after filing complaint to add two new nondiverse parties).  In general, courts have found plaintiffs not to be dilatory when the plaintiff amends his complaint "before any trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred."  *Herzog v. Johns Manville Products Corp.,* No. Civ. A. 02–1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002) (citations omitted).

The Court finds that Protech moved to join Shatto well before trial—two months after filing its Original Petition, three weeks after NDC filed its Original Answer, ten days after NDC filed its Amended Answer, and nine days after NDC filed its Notice of Removal.  Furthermore, although the parties have conferred and submitted a joint report pursuant to Fed. R. Civ. P. 26,

the Court has not yet issued a Scheduling Order.  Accordingly, the Court finds that Protech has

not been dilatory in seeking to amend, so this factor weighs in favor of granting leave.

### III.    Injury to Protech

The third *Hensgens* factor is injury to the plaintiff if amendment is not permitted.  When

examining whether denying joinder would injure a plaintiff, courts consider the "cost, judicial

efficiency, and possible inconsistency of results" that might result if the plaintiff is forced to try

two related claims in different courts.  *McNeel*, 2004 WL 1635757, at *4; *see Bonilla*, 2011 WL

3882280, at *4.  The mere potential for parallel litigation, however, is not grounds for granting

the amendment; the party must show that it will be *significantly* injured if the court denies

joinder.  *Alba,* 2008 WL 4287786, at *3; *see also Lucas*, 2013 WL 2905488, at *7; *Ewans v.*

*Wells Fargo Bank N.A.*, No. CIV. A. 3:08-CV-1395, 2008 WL 4998945, at *2 (N.D. Tex. Nov.

21, 2008) (Lynn, J.).

In this case, Protech has not shown that it will be significantly injured if the Court denies

joinder, and parallel litigation results.  Many of Protech's claims against Shatto are pled in the

alternative, in the event that there was no authorized contract between NDC and Protech, an

issue now moot.  The remainder of Protech's claims against Shatto do not adequately plead a

likely basis for recovery against him, nor a need for joinder.  *See Iqbal*, 556 U.S. at 663;

*Parkcentral*, 2010 WL 3119403, at *3.  As pointed out in *Smith v. Robin America, Inc.*, "scant

possibility of recovery against [nondiverse defendants]" cannot support a finding of significant

injury. No. CIV.A.H-08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009); *see also*

*Sterling v. Zurich American Ins. Co.*, 4:09-CV-510-A, 2009 WL 3415789, at *2 (N.D. Tex. Oct

22, 2009).

Further, Protech has not shown that it would be significantly injured if it had to try its fraud and negligent misrepresentation claims against Shatto in state court.  NDC is a national transportation company seemingly capable of satisfying the entire judgment without contribution from Shatto.  *See O'Connor*, 846 F. Supp. at 41 (no joinder when the two original defendants would easily be able to "satisfy a future judgment" without joining the nondiverse defendant); s*ee also Martinez*, 701 F. Supp. 2d at 892 (noting that plaintiff will not be significantly injured by denial of joinder because "nothing in the record indicates that [the original defendant] will be financially unable to fully satisfy a judgment").

Because the Court finds that Protech would not suffer significant injury if Shatto were not joined, this factor weighs against granting leave.

## IV.    Equitable Factors

Finally, *Hensgens* requires the Court weigh the plaintiff's overarching interest in avoiding parallel litigation, with the defendant's desire to pursue the case in federal court. *Hensgens*, 833 F.2d at 1182.  Courts use this factor to address any "unique circumstances presented" by the parties.  *Bonilla*, 2011 WL 3882280, at *5.  Protech generally argues that, since "futility of amendment is not at issue, the better course is to have all potentially liable parties in one proceeding."[21]  *See Jackson*, 2003 WL 22533619, at *3.  Here, the Court finds no significant equitable interests at play.

---

[21] Dkt. No. 5 at 6.

## CONCLUSION

The *Hensgens* factors weigh in favor of denying leave.  Therefore, Plaintiff's Motion for

Leave to File First Amended Complaint is **DENIED**, except that Plaintiff must file on or before

August 17, 2015, an Amended Complaint renaming the Defendant as National Distribution

Centers, L.P.

**SO ORDERED**.

August 4, 2015.



**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**